56 Wn.2d 297 (1960)
352 P.2d 806
In the Matter of the Application for a Writ of Habeas Corpus of ARTHUR ST. PETER, Petitioner,
v.
B.J. RHAY, as Superintendent of the State Penitentiary, Respondent.[1]
No. 35233.
The Supreme Court of Washington, En Banc.
June 2, 1960.
Irving C. Paul, Jr., for petitioner.
The Attorney General and Lawrence Ross, Assistant, for respondent.
MALLERY, J.
This is an original application for a writ of habeas corpus. To pass upon it, we are required to interpret the meaning of the phrase "term of imprisonment" as used by the legislature in RCW 9.92.080, which provides, inter alia:
"... whenever a person while under sentence of felony shall commit another felony and be sentenced to another term of imprisonment, such latter term shall not begin until the expiration of all prior terms: ..."
This statute was enacted in 1909. There was in effect at that time the Laws of 1897, chapter 74, p. 201, which provided for time allowance for good behavior to be deducted from the penalty prescribed by law for any offense. The 1897 law was repealed by the Laws of 1929, chapter 59, p. 55, but has now been replaced by the Laws of 1935, chapter 114, § 2, p. 308 (cf. RCW 9.95.070).
[1] We think that RCW 9.92.080 should be construed in the light of the Laws of 1897, chapter 74, p. 201, under the general rule of construction that statutes on the same subject, which are in effect simultaneously, should be interpreted together.
[2] When both statutes are considered, it is obvious that the penalty prescribed by statute and imposed by the sentence of the court is not the actual "term of imprisonment" contemplated by the legislature in its use of that phrase.
*299 The provisions of law which entitle a convicted person to be released earlier than the period named in the statutory penalty, because of the time credit provision, creates the hiatus with which we are here concerned.
This state, in common with many others, has had a long experience with time credits for good behavior, commonly called "good time," as a disciplinary device. Indeed, it has been shown to be well-nigh indispensable to prison management. "Terms of imprisonment" are substantially affected by "good time," but penalties as prescribed by law and pronounced in the sentence of the court are fixed and unchanging.
If "term of imprisonment" means the duration of confinement, a meaning for which the petitioner contends, it cannot also mean the statutory period prescribed as a penalty for an offense, because the latter may include a period during which a convicted person is no longer confined by reason of having enjoyed the "good time" credit granted to him by the statute. This brings us at once to the difference between the period of the penalty prescribed by statute for the crime and the "term of imprisonment" as affected by the statutory provisions for "good time."
If "term of imprisonment" were to mean the length of the penalty prescribed by statute rather than actual imprisonment, the sentence for a subsequent felony could not start when an inmate was released with allowance for "good time," but, instead, would commence only after he had been at large for the length of his "good time" allowance. This would create an anomalous situation.
Accordingly, we think the legislature intended the phrase "term of imprisonment" to mean the term during which an inmate is actually imprisoned. This interpretation accords with the power that the legislature conferred upon the board of prison terms and paroles (hereinafter called the parole board) by the provisions of RCW 9.95.040 to fix the "duration of confinement" at a lesser period than the penalty prescribed by statute for the offense. The phrase "term of imprisonment," as used in RCW 9.92.080, means *300 the same as the phrase "duration of confinement," as used in RCW 9.95.040.
[3] We now apply this interpretation to the following facts presented by the instant case: The petitioner entered a plea of guilty to a charge of burglary in the second degree. The penalty prescribed by the statute for this offense is a maximum of fifteen years in the penitentiary at Walla Walla. Accordingly, a sentence of fifteen years was imposed upon him on October 1, 1943.
Pursuant to RCW 9.95.040, the parole board fixed the duration of confinement at six and one-half years. In addition to this, the parole board calculated and allowed petitioner time credit as provided for in RCW 9.95.070, which, but for subsequent events, would have terminated petitioner's incarceration under his term of imprisonment on the second-degree burglary charge on January 31, 1948. He was not released at the expiration of his term of imprisonment because, before that date, he had committed the crimes of escape and second-degree assault. For these offenses the court imposed the statutory penalty of ten years on each offense and made them run concurrently. The parole board, as authorized by RCW 9.95.040, then fixed the duration of confinement for the escape and second-degree assault charges at ten years each.
Effective January 31, 1948, the petitioner was paroled from the second-degree burglary conviction to begin serving his time on the escape and second-degree assault sentences, which were to run concurrently. Therefore, the ten-year period expired on January 31, 1958.
Effective March 3, 1958, over a month after the termination of the escape and second-degree assault sentences, the petitioner's parole on the second-degree burglary conviction was revoked and he was ordered to serve the remainder of his fifteen-year sentence. Since he was at large for eight days during his escape, this sentence expired fifteen years and eight days after conviction, or on October 8, 1958.
The petitioner is not now being confined under a presently valid commitment and must be released forthwith.
It is so ordered.
WEAVER, C.J., HILL, OTT, FOSTER, and HUNTER, JJ., concur.
*301 FINLEY, J. (dissenting)
The majority conclude that "the petitioner is not now being confined under a presently valid commitment ..." I cannot agree. For ease of reference, the significant events in this case are set forth chronologically, as follows:
(1) October 1, 1943: Petitioner was convicted of second-degree burglary; sentenced by the court to not more than fifteen years imprisonment.
(2) October 31, 1947: Petitioner was convicted of escape and second-degree assault; sentenced by the court to not more than ten years confinement on each count, sentences to run concurrently.
(3) January 31, 1948: Parole board issued its order, purportedly "paroling" petitioner with respect to the fifteen-year burglary sentence; petitioner, however, not actually released from confinement.
(4) March 3, 1958: Petitioner's parole on the second-degree burglary conviction was revoked by the board, and he was ordered to serve the remainder of his fifteen-year sentence for that crime.
In State ex rel. Mason v. Superior Court (1954), 44 Wn. (2d) 67, 265 P. (2d) 253, this court held that the action of the parole board in granting parole prior to the expiration of the maximum sentence imposed by the court, in effect, permitted a second sentence  imposed for a later crime  to commence running prior to the expiration of the full term of the earlier judicial sentence. In other words, we said that the governing statute, RCW 9.92.080,
"... should be interpreted as if the italicized words were added:
"`... whenever a person while under sentence of felony commits another felony and is sentenced to another term of imprisonment, such latter term shall not begin until the expiration of incarceration under all prior terms ...'"
In relation to the Mason case, it seems to me that it should be pointed out that the parole board, at any time prior to the terminal date of Mason's first sentence, could have revoked its order which gave Mason the privilege of parole. *302 At the time when we ruled on the validity of Mason's confinement, it had not done so. Yet there was no question that it would be highly unreasonable and illogical to hold that Mason, who had just been convicted of the crime of forgery, committed while he was on parole under a sentence for grand larceny, should remain free until the terminal date of his judicially imposed grand larceny sentence, unless, in the meantime, the parole board saw fit to revoke its order of parole. It, therefore, logically followed that, in order to avoid this result, it was necessary to relate Mason's confinement to the judicially imposed forgery sentence by reading the statute as above quoted.
However, if the parole board had revoked Mason's parole, his confinement could thereupon have been related to his first sentence for grand larceny, and, logically, under the statute, would relate only to the first sentence until its termination. Thus, it would seem that, in the face of a fact pattern such as arose in Mason, and is also present in the instant case  i.e., where a criminal offender commits a second crime while still under sentence for an earlier crime  his subsequent confinement may be related to either the remainder of the maximum sentence imposed by the court for the first crime, or to the sentence imposed for the second crime, dependent upon the action or nonaction of the parole board. By granting parole with respect to the first sentence, the board may cause the offender's subsequent confinement to constitute a potential credit toward completion of the second sentence. But, if no parole is granted  or such parole as has been granted is revoked prior to the termination of the first sentence  then that confinement which otherwise would have been a potential credit toward the second sentence will instead relate to and be an actual credit toward the first sentence, and will leave the second sentence to be fully served after completion of the first, subject, of course, to the authority and discretion of the parole board to determine the time to be served respecting the second sentence.
Applying this analysis to the instant case, that time which was served by the petitioner subsequent to the parole *303 board's order of January 31, 1948, constituted a potential credit toward completion of the ten-year sentences imposed by the court for escape and assault. However, when the parole board, on March 3, 1958, revoked its order of parole respecting the fifteen-year burglary sentence, it erased this potential credit and, instead, applied the post-January 31, 1948, confinement toward completion of the burglary sentence, leaving the ten-year escape and assault sentences yet to be served. Therefore, when, on October 8, 1958, the terminal date of the fifteen-year burglary sentence, arrived, the petitioner, contra to the views expressed in the majority opinion, was not entitled to be released, since he still had the ten-year escape and assault sentences to serve. The terminal date of these latter sentences (running concurrently, pursuant to the order of the court at the time of the escape and assault convictions) will not arrive until October 8, 1968, although, as indicated above, the board, in its discretion, may grant parole prior to that date if it sees fit to do so.
DONWORTH, and ROSELLINI, JJ., concur with FINLEY, J.
NOTES
[1] Reported in 352 P. (2d) 806.